UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDS FOR FREEDOM,

    *Plaintiff*,

v.

U.S. DEPARTMENT OF DEFENSE,

    *Defendant*.

Civil Action No. 23-3607 (TJK)

**MEMORANDUM OPINION**

    In December 2023, Feds for Freedom filed this Freedom of Information Act case seeking to compel the Department of Defense to process its request for records relating to the COVID-19 pandemic and Operation Warp Speed. Defendant now moves for summary judgment, arguing that it need not respond to Plaintiff's request because it is unduly burdensome. The Court agrees. Accordingly, the Court will grant Defendant's motion and enter judgment in its favor.

**I.    Background**

    On March 10, 2023, Feds for Freedom, an organization formed "to protect employee rights by confronting the federal government's mandates requiring vaccination for COVID-19," sent a Freedom of Information Act ("FOIA") request to the Department of Defense seeking "all communications to/from or carbon copying (cc) or blind carbon copying (BCC) [Captain] David Soldow related to COVID-19 and Operation Warp Speed." ECF No. 1 ¶¶ 8, 13; ECF No. 1-1 at 4. Operation Warp Speed was "a partnership between the Departments of Health and Human Services and [Defense] aimed to help accelerate the development of a COVID-19 vaccine." ECF No. 17-1

("Herrington Decl.")[1] ¶ 5. And Captain Soldow—the Executive Secretary for the Office of the Secretary of Defense from April 2020 to August 2021—was tasked with "support[ing]" the Office's "immediate office management by tasking," "processing," and "manag[ing] all correspondence sent to and prepared for the [Secretary] and [Deputy Secretary of Defense]." *Id.* ¶ 7.

Defendant confirmed that it received the request. ECF No. 1 ¶ 14. And at Defendant's request, Plaintiff provided a date range for the records it sought: April 1, 2020, to May 1, 2022. *Id*. ¶ 15. Still, Defendant failed to timely respond. ECF No. 1 ¶¶ 14–18. So Plaintiff sued, seeking "[a]n Order from this Court that [Defendant] is to process and release all records responsive to the Request immediately." *Id.* at 5.

Defendant represents, without contradiction, that Plaintiff refused to consider narrowing its request any further. ECF No. 13 at 2. So Defendant now moves for summary judgment, arguing that it need not respond to the request because its scope is so unreasonably expansive that processing and responding to it would be unduly burdensome. *Id.* at 3–4.

## II.   Legal Standards

"Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movant[] and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in [its] favor." *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). "The evidence presented must show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency

---

[1] ECF No. 17-1 includes two declarations by Mark. H. Herrington. Both are organized by paragraph. The Court's reference to the Herrington Declaration refers to the earlier declaration, ECF No. 17-1 at 2–6.

bears the burden of proving that it has complied with its obligations under the FOIA." *MacLeod v. DHS*, No. 15-cv-1792 (KBJ), 2017 WL 4220398, at *6 (D.D.C. Sept. 21, 2017) (citing 5 U.S.C. § 552(a)(4)(B)).

## III.    Analysis

There is no genuine dispute of material fact that Plaintiff's FOIA request would be unreasonably burdensome on Defendant. As such, Defendant is entitled to judgment as a matter of law, and the Court will enter summary judgment in its favor.

FOIA requires agencies to produce responsive records to requests that "reasonably describe[]" the records sought. 5 U.S.C. § 552(a)(3)(A). FOIA requests fail this requirement, meaning agencies need not respond to them, when the requests (1) rely upon "vague words and descriptions," (2) "seek[] difficult to locate records," or (3) impose "overly burdensome post-search efforts." *Ctr. for Immigr. Stud. v. USCIS*, 628 F. Supp. 3d 266, 271–72 (D.D.C. 2022). Defendant argues that Plaintiff's FOIA request falls squarely within this third category.

The D.C. Circuit established this category in *American Federation of Government Employees v. Department of Commerce* (*AFGE*), 907 F.2d 203 (D.C. Cir. 1990). There, the FOIA requests at issue sought two "broad" categories of records that included "*every* chronological office file and correspondence file, internal and external, for every branch office, staff office, assistant division chief office, division chief office, assistant director's office, deputy director's office, and director's office" and "*every* division or staff administrative office file in the [Census] Bureau which records, catalogues, or stores SF–52s or stores promotion recommendation memos, or both." *Id.* at 205, 208–09. According to the Circuit, such requests, which "might identify the documents requested with sufficient precision to enable the agency to identify them," still do not "reasonably describe[] a class of documents subject to disclosure" because they are "so broad as to impose an unreasonable burden upon the agency." *Id.* at 209 (quotation and internal quotation marks omitted). In

3

other words, even when a request describes the records it seeks with sufficient precision, that description is still not *reasonable* as required by 5 U.S.C. § 552(a)(3)(A) when responding to the request would unduly burden the agency. *Id.*

The Circuit identified two reasons for concluding that the requests at issue would impose an unreasonable burden on the agency. First, responding would be quite costly as it "would require the agency to locate, review, redact, and arrange for inspection a vast quantity of material." *AFGE*, 907 F.2d at 209. Second, the requests were "largely unnecessary to the [requesters]' purpose." *Id.* Because the purpose animating the request was to shed light on the agency's promotion practices, the Circuit concluded that the broad requests were unreasonably burdensome because they were unnecessarily duplicative and extended to documents "in no way tied to [the requesters'] expressed concern." *Id.*

Defendants argue that Plaintiff's request is unreasonably burdensome under *AFGE* because responding to Plaintiff's request (1) would require substantial time and resources and (2) is to a large degree unnecessary, considering Plaintiff's goals. The Court agrees.

### A. Plaintiff's Request Would Require Defendant to Invest Substantial Time and Resources

Starting with the first of *AFGE*'s considerations, Defendant's declaration from a former FOIA attorney establishes that Plaintiff's request would involve significant resources and post-search efforts. Specifically, the declaration asserts that, because of the cross-cutting impact COVID-19 had on the Department's functioning, Plaintiff's request would be akin to a FOIA request seeking "all communications regarding Iraq or Afghanistan during 25 months at the height of either campaign." Herrington Decl. ¶ 5. In support, the declaration states that a preliminary search based upon Plaintiff's request yielded over 1.2 gigabytes of records, a volume "so large that attempts to get an accurate document and page count have failed." *Id.* ¶ 9. Estimates, however,

4

are that "there are over 2,000 [responsive] emails, each with attachments." *Id.*[2] With each email containing an estimated average of "3 pages per email" and "10 pages per attachment," Plaintiff's request would cover over "26,000 pages of records." *Id.*

The sheer volume of responsive pages is not the only issue. Instead, as the requested "records are communication to or from the Department's front office, the discussions would require the most scrutinous review." Herrington Decl. ¶ 10. And because of various "required actions," including "initial review, the need to send documents to subordinate [Department] components or other federal agencies for consultations, final quality control, and legal review," processing each page would likely "take an average of 15 minutes." *Id.* In sum, Plaintiff's request would require about 6,500 hours of work. *Id.*

This falls well beyond the normal range of time courts in this district have determined to be reasonable. When searches or processing fall within the tens- or hundreds-of-hours range, courts routinely find the requests reasonable. In *People for American Way Foundation v. DOJ*, for example, the court concluded that a request was not unduly burdensome since it would take only "120 hours of work—something that could be achieved by three full-time employees during a single week." 451 F. Supp. 2d 6, 15 (D.D.C. 2006). This is so even when processing would extend into the lower thousands of hours. *E.g.*, *Kwoka v. IRS*, No. 17-cv-1157 (DLF), 2018 WL 4681000, at *5 (D.D.C. Sept. 28, 2018) (2,200 hours).

When search and review would extend into the multiple thousands of hours, however, a different pattern emerges. In *Wolf v. CIA*, for example, the court held that a search that would take

---

[2] The declaration warns that these numbers are likely underinclusive as the declarant did not know whether all Plaintiff's requested search terms were used. Herrington Decl. ¶ 9. Consistent with its obligation to view the facts in the light most favorable to Plaintiff, the Court declines to give Defendant this benefit of the doubt and will not treat its estimates as underinclusive.

"approximately 3675 hours and cost about $147,000" was unduly burdensome. 569 F. Supp. 2d 1, 9 (D.D.C. 2008). Similarly, in *Center for Immigration Studies v. USCIS*, the court found that "the burden" of a FOIA request was "too high" where the agency estimated that it would take 8,151 hours to review and process the requested material. 628 F. Supp. 3d at 272–73; *see also Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 275–76 (D.D.C. 2014) (8,000 hours). Furthermore, if a search would require a multi-member team to spend every working hour for a year or more on a FOIA request, a court may be able to conclude that the search is burdensome. *Int'l Couns. Bureau v. DOD*, 723 F. Supp. 2d 54, 59–60 (D.D.C. 2010).

Here, Plaintiff's request fits neatly within the range of required-response time that courts have determined to be unreasonable. It would require nearly twice the time that the court in *Wolf* determined was unduly burdensome. 569 F. Supp. 2d at 9. Additionally, it would take a team of three FOIA attorneys, working around the clock, *over a year* to accomplish the over 6,500 hours of work required to complete Plaintiff's request.[3] *See Int'l Couns. Bureau*, 723 F. Supp. 2d at 59–60.

Plaintiff's responses are unpersuasive. First, it argues that its request is not unduly burdensome as it targets only "a single official's communications . . . related to a single operation." ECF No. 14 at 3. But this ignores the status of that official and the nature of the operation (not to mention it also ignores that the request sought all communications related to COVID-19 generally, not just Operation Warp Speed, ECF No. 1-1 at 4). As Defendant's declaration lays out, Captain Soldow's role as Executive Secretary meant he was responsible for processing and managing all correspondence for the Secretary and Deputy Secretary of Defense. Herrington Decl. ¶ 8. Thus,

---

[3] With 40 hours in a work week and 52 weeks in a year, there are 2,080 working hours in a year, not including any holidays or vacations.

a request for these communications "is essentially a request for all communications to or from the Office of the Secretary of Defense" regarding COVID-19 and Operation Warp Speed. *Id.* So Defendant is not attempting to "re-cast[]" Plaintiff's request as broader than it is. ECF No. 14 at 3. It merely recognizes that the request, because of the nature of the subject matter and the status of the official at issue, would be akin to asking Defendant to produce "all communications" from the Office of the Secretary of Defense "regarding Iraq or Afghanistan . . . at the height of either campaign." Herrington Decl. ¶ 5.

Second, Plaintiff argues that Defendant is making much ado about nothing because the 1.2 gigabytes of information Defendant found in a preliminary search would fit on a $2 flash drive or in five maximum-capacity emails sent by Gmail. ECF No. 14 at 3. But the size of any given file does not necessarily reflect the amount of time that it would take for Defendant to review it: A high-resolution picture, for example, could take mere seconds to review despite having a large file size, while a small file containing a long document full of text could take much longer. For this reason, courts have focused on an agency's "good faith estimate of the excessive amount of time required to complete a search that it feels is unreasonably burdensome" in deciding whether to "uph[o]ld the agency's refusal to conduct the requested search." *Pinson v. DOJ*, 80 F. Supp. 3d 211, 216 (D.D.C. 2015). Here, Defendant's declaration shows that Plaintiff's request would take "the thousands of hours courts in this district have found to impose an undue burden." *War Horse News, Inc. v. U.S. Dep't of the Navy*, No. 22-cv-3303 (TSC), 2024 WL 4346345, at *8 (D.D.C. Sept. 30, 2024). The size of the files involved is simply beside the point.

Third, Plaintiff argues that a search producing 26,000 pages of documents "is common for issues of this kind." ECF No. 14 at 3–4. Even if that is true, it still misunderstands the relevant inquiry. As just discussed, courts focus on the time and expense that responding to a FOIA request

7

would require in assessing the request's reasonableness. *E.g., Wolf*, 569 F. Supp. 2d at 9 (holding that the review of microfilms that "would take approximately 3675 hours and cost about $147,000" was "unreasonably burdensome"). The number of pages, divorced from the resources that would be required to process those pages, only tells a fragment of the story.

For this reason, the Court finds *Public Health & Medical Professionals for Transparency v. FDA*, No. 4:21-cv-1058-P, 2022 WL 90237 (N.D. Tex. Jan. 6, 2022), inapposite. First, that case involved the setting of a production schedule, not whether the agency had to respond to the FOIA request. *Id.* at *2 ("To that end, the Court further concludes that the *production rate*, as detailed below, appropriately balances the need for unprecedented urgency in processing this request with the agency's concerns regarding the burdens of production." (emphasis added)). Second, and more importantly, while the court did order the agency to produce many tens of thousands of pages on a relatively expedited timeline, it did not discuss how much time processing those pages would take. *See id.* at *1–2. Indeed, it appears that processing would take nowhere near as long per page as it would here, as the agency itself suggested that it could produce 12,000 pages within a month of the court's order. *Id.* at *2. So this out-of-circuit authority does little to help Plaintiff.

Finally, Plaintiff argues that "the notion that each page would take an average of 15 minutes to review is inflated." ECF No. 14 at 4. Instead, Plaintiff speculates that "[f]ifteen minutes is likely to be the outer limited expended on any single page, and likely to be an outer limit reached only rarely." *Id.* Plaintiff's support? Nothing. Yet "affidavits submitted by the agency to demonstrate the adequacy of its response [to a FOIA request] are presumed to be in good faith." *Hall v. CIA*, 881 F. Supp. 2d 38, 52 (D.D.C. 2012). This extends to declarations and affidavits laying out "good faith estimate[s] of the excessive amount of time required to" respond to a FOIA request. *Pinson*, 80 F. Supp. 3d at 216. "[P]urely speculative claims" are insufficient to rebut that

8

presumption. *Wolf*, 569 F. Supp. 2d at 10 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

Here, Defendant's estimate is supported by the sworn declaration of a former Associate Deputy General Counsel who has seventeen years' worth of experience in overseeing FOIA litigation. Herrington Decl. ¶ 1. And it is uncontroversial that records relating to officials in "high positions" must be "review[ed] . . . closely for redactions" before they can be produced. *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 273. Because Plaintiff has presented nothing more than "purely speculative claims" attacking the truthfulness of Defendant's declaration, "the Court credits [Defendant]'s representation that, based on the high position of" Captain Soldow and the office he worked in, each page would take 15 minutes on average to fully process. *Id.* So the Court further credits Defendant's estimate that it would take over 6,500 hours "to locate, review, redact, and arrange for inspection" the material responsive to Plaintiff's FOIA request. *AFGE*, 907 F.2d at 209.

### B.     Plaintiff's Request Is Largely Unnecessary for Plaintiff's Purpose

All the above said, "burdensomeness does not boil down to a simple game of numbers." *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 273. FOIA requests can and do include productions that take years to complete. *Id*; *see also War Horse News, Inc*, 2024 WL 4346345, at *9 (finding "roughly 8,500 hours of review time" reasonable under the circumstances).[4] This is where *AFGE*'s

---

[4] The Court notes that at least part of the court's decision in *War Horse News, Inc.* was based on that court's skepticism about whether a burdensome review of identified records "fit[s] . . . into FOIA's rule that an agency need not undertake an overly burdensome *search*." 2024 WL 4346345, at *8. But, as discussed above, the D.C. Circuit has expressly blessed this approach. *See AFGE*, 907 F.2d at 209 ("While Requests 3A and 3B might identify the documents requested with sufficient precision to enable the agency to identify them—we do not think that is in dispute here—it is clear that these requests are so broad as to impose an unreasonable burden upon the agency. They would require the agency to locate, review, redact, and arrange for inspection a vast quantity of material.").

9

second consideration—the reasonableness of the request in light of the requester's "purpose," 907 F.2d at 209—comes into play.

Defendant argues that the breadth of Plaintiff's request is unreasonable in light of Plaintiff's asserted purpose. In its complaint, Plaintiff alleges that its "purpose . . . is to protect employee rights by confronting the federal government's mandates requiring vaccination for COVID-19." ECF No. 1 ¶ 8. But Plaintiff's FOIA request is not so limited. It sought "all communications related to" COVID-19 generally and, more specifically, "to Operation Warp Speed (OWS), companies contracted to work with [the Department,] and other government elements on OWS," including communications regarding "any commercial contracts and/or [Department] contracts made between the federal government and companies involved in OWS." ECF No. 1-1 at 4.

Thus, Plaintiff's request asks for records well beyond its asserted interest, and it would undoubtedly require the agency to process "thousands of [pages] with no conceivable relation to the policies in which [Plaintiff] proclaims an interest." *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 273. As Defendant's declaration explains, the COVID-19 pandemic impacted Defendant "in innumerable ways during" the period at issue in Plaintiff's FOIA request. Herrington Decl. ¶ 5. While some responsive records would surely involve "vaccine mandates and exceptions thereto," they would also include many other—at best tangentially related—issues, such as Department policy on "how to continue the Department's vital global missions while keeping both the military and civilian workforce safe; quarantine policies; . . . and involvement in . . . accelerat[ing] the development of a COVID-19 vaccine." *Id.*

Plaintiff does not explain how this expansive category of records bears on its relatively limited purpose of "protect[ing] employee rights by confronting the federal government's mandates requiring vaccination for COVID-19." ECF No. 1 ¶ 8. Indeed, it does not respond to this

10

portion of Defendant's burdensomeness challenge at all. *See* ECF No. 14 at 2–4. And regrettably, Plaintiff chose not to work with Defendant to narrow its request to focus on records in which it is truly interested. ECF No. 13 at 2. Thus, the burden that Plaintiff's request would place on Defendant "is 'more obvious[ly]' unreasonable given this mismatch between the material that [Plaintiff] says it wants and the material that [Plaintiff's] requests will force [Defendant] to review." *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 273–74 (quoting *AFGE*, 907 F.2d at 209).

### IV.   Conclusion

For all the above reasons, the Court concludes that Plaintiff's FOIA request is unduly burdensome. So it will grant Defendant's Motion for Summary Judgment and enter judgment in its favor. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 18, 2025